**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JACOB BUTCHER,                          :
    **Plaintiff**                        :         **No. 1:25-cv-02400**
                                            :
    **v.**                               :         **(Judge Kane)**
                                            :
**J.S.T. CORPORATION,**                  :
    **Defendant**                        :

### MEMORANDUM

Before the Court is a motion seeking partial dismissal of Plaintiff Jacob Butcher ("Plaintiff")'s complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendant J.S.T. Corporation ("JST"). (Doc. No. 6.)  For the following reasons, the Court will grant in part and deny in part JST's partial motion to dismiss.

**I.      BACKGROUND**[1]

Plaintiff was employed by JST for nearly 24 years as a tool-and-die maker in its molding department at JST's Harrisburg, Pennsylvania facility.  (Doc. No. 1 ¶ 25.)  Plaintiff asserts that during his employment, he consistently received positive performance reviews and merit-based increases and was "recognized as a highly skilled and reliable employee."  (Id. ¶ 27.)  Plaintiff alleges that he never received any kind of discipline—"no write-ups, warnings, suspensions, or other corrective actions"—while working for JST and that "[s]upervisors and co-workers alike regarded [Plaintiff] as respectful, dependable, and committed to his work."  (Id. ¶¶ 28–29.)

Plaintiff alleges that "[o]n or about November 4, 2024, at approximately 6:30 a.m., before his shift began, Plaintiff was seated at his desk in the engineering department, speaking privately

---

[1]  The factual background is drawn from Plaintiff's complaint (Doc. No. 1), the allegations of which the Court accepts as true for purposes of the pending motion to dismiss.  See Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017).

with two co-workers, Jeff Bittler and Bill Danielewicz." (Id. ¶ 32.) Plaintiff asserts that "[a]ll three men are Christians and frequently discussed religious topics together at work during their employment with JST." (Id. ¶ 33.) Plaintiff alleges that on the relevant morning, the three men "were discussing gender identity and transgender issues from a Christian worldview, including their belief that God created humans as male and female," and their belief that "individuals are called to live in accordance with the sex God assigned to them at birth." (Id. ¶¶ 34, 36.) Plaintiff avers that their conversation was "not directed at any individual or group, or any other JST employee." (Id. ¶ 37.) Plaintiff asserts that he "believed that he and his two co-workers were essentially alone in that area of the building and that their conversation would not be overheard by others." (Id. ¶ 38.)

Plaintiff asserts that approximately one week later, on or about November 12, 2024, Plaintiff had a meeting with JST management, including Kevin Lauret, Kevin Chabala, Cody Wynn, and Jorie Clifton, during which the JST managers questioned Plaintiff about his November 4th "religious conversation." (Id. ¶¶ 39–40.) Plaintiff alleges that JST's management "recited a list of alleged statements about transgender individuals that they claimed had been made during the conversation, including characterizations Plaintiff did not recall using." (Id. ¶ 42.) Plaintiff asserts that he "acknowledged that he had discussed transgender issues from a Christian perspective but did not recall making the specific statements attributed to him and denied intending to demean or attack any individual or group." (Id. ¶ 43.)

Plaintiff asserts that, at the conclusion of the November 12, 2024 meeting, JST instructed him "to leave the facility and not return until further notice," but did not specify whether Plaintiff was being placed on paid or unpaid leave. (Id. ¶¶ 46–47.) Plaintiff avers that he was instructed to return for another meeting with JST management two days later, on November 14, 2024. (Id.

2

¶ 48.)  Plaintiff alleges that, at the November 14th meeting, JST told him that an unidentified third person allegedly overheard part of Plaintiff's conversation with his two coworkers and complained to JST.  (Id. ¶ 49.)  Plaintiff asserts that JST management told him that "he could return to work only if he signed a copy of JST's anti-harassment policy and completed 'sensitivity' training."  (Id. ¶ 50.)  Plaintiff avers that he "was willing to comply with company policies, and [] signed the anti-harassment policy on the spot."  (Id. ¶ 51.)  Plaintiff alleges that he raised concerns "about how JST's policy was being applied to private religious conversations among Christian co-workers," and that in response to his questions, a JST manager "smirked and stated, in substance, that an employee saying, 'I voted for Kamala Harris' would be acceptable under JST's policy."  (Id. ¶¶ 52–53.)

Plaintiff asserts that JST management characterized his questions and objections as "insubordination" and "aggression," but Plaintiff contends that he "did not yell, threaten anyone, stand up in a menacing way, use profanity, or engage in any physical or disruptive behavior during the meeting" but instead "remained seated and spoke firmly but respectfully, expressing confusion and frustration at being investigated and disciplined for a private religious discussion with co-workers who were not offended."  (Id. ¶¶ 55–57.)  Plaintiff alleges that JST management also raised issues unrelated to his November 4, 2024 conversation, including Plaintiff's "routine practice of photographing molds and sending those photos to his supervisor using his company email—a practice that had never been previously identified as misconduct or as a security concern," and a time Plaintiff "had briefly recorded part of a prior meeting on his cellphone," which he stopped when he was informed that recording without consent was illegal.  (Id. ¶¶ 58–60.)  Plaintiff asserts that "[w]hen JST's management warned him that any future recording would result in 'immediate termination,' [he] expressed fear that his mistake was being held over

his head and remarked that he felt like this was being used against him." (Id. ¶ 61.)  Plaintiff avers that "JST later distorted his reaction as [Plaintiff] threatening to blackmail JST even though he made no threats and was simply trying to protect his job by navigating a difficult meeting with management where his religious beliefs were being scrutinized." (Id. ¶ 62.)

JST granted Plaintiff's request to use personal time for the remainder of the day on November 14th after the meeting concluded, but later that day, Plaintiff was informed that he was being placed on administrative leave.  (Id. ¶¶ 64–65.)  On or about November 16, 2024— within roughly 48 hours of the November 14th meeting—JST sent Plaintiff an email notifying him that his employment was terminated.  (Id. ¶ 66.)

On May 16, 2025, Plaintiff filed a Charge of Discrimination against JST with the Equal Employment Opportunity Commission ("EEOC"), which was dual-filed with the Pennsylvania Human Relations Commission ("PHRC"), alleging religious discrimination, failure to accommodate, and retaliation.  (Doc. Nos. 1; 6-2.)  Plaintiff received a Determination and Notice of Rights from the EEOC on September 15, 2025 (Doc. No. 6-3), and a letter from the PHRC notifying him that the PHRC closed his case on January 26, 2026 (Doc. No. 13-1).

On December 11, 2025, Plaintiff filed his complaint in this Court (Doc. No. 1), asserting five (5) counts: religious discrimination—disparate treatment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") (Count I); failure to accommodate religious beliefs under Title VII (Count II); retaliation under Title VII (Count III); religious discrimination—disparate treatment and failure to accommodate under the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA") (Count IV); and retaliation under the PHRA (Count V).

In response, on February 10, 2026, JST filed the instant partial motion to dismiss for

failure to state a claim and failure to administratively exhaust claims under the PHRA before filing suit (Doc. No. 6), and a brief in support of the motion (Doc. No. 10).  Thereafter, on February 24, 2026, Plaintiff filed a memorandum in opposition to JST's partial motion to dismiss.  (Doc. No. 13.)  In response, on March 10, 2026, JST filed a reply brief in support of its partial motion to dismiss.  (Doc. No. 14.)  Having been fully briefed, JST's motion is ripe for disposition.

## II.    LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 312 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 552 U.S. 662 (2009).  Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is

facially plausible." See id.  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Township, 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

In ruling on a 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

## III.    DISCUSSION

JST seeks dismissal of three of the five claims in Plaintiff's complaint for failure to state a claim on the following grounds: (1) Counts IV (religious discrimination–disparate treatment and failure to accommodate) and V (retaliation) fail to state a claim because Plaintiff filed suit before administratively exhausting these claims under the PHRA; (2) Count II (failure to accommodate religious beliefs) and, to the extent asserted in Count IV (religious

6

discrimination—disparate treatment and failure to accommodate), fail to state a claim because Plaintiff did not plead any of the required elements of a failure to accommodate religious beliefs claim. (Doc. No. 6.) The Court first addresses JST's administrative exhaustion argument regarding Counts IV and V.

### A.    Counts IV and V—Administrative Exhaustion Under the Pennsylvania Human Rights Act

Plaintiff maintains that he appropriately exhausted his administrative remedies as required under 43 Pa. C.S.§ 962(c)(1) by dual-filing his complaint with the EEOC and PHRC on May 16, 2025 (Doc. Nos. 1; 6-2), and receiving a Determination and Notice of Rights from the EEOC on September 15, 2025 (Doc. No. 6-3), advising him that he had ninety (90) days to file a lawsuit, and a letter from the PHRC notifying him that the PHRC closed his case on January 26, 2026 (Doc. No. 13-1).[2] Plaintiff filed his complaint on December 11, 2025. (Doc. No. 1.)

JST argues that this lawsuit was filed prematurely—six months and twenty-six days— after Plaintiff filed his PHRC complaint and prior to receiving the PHRC's letter closing Plaintiff's PHRA claim. (Doc. No. 14 at 1.) JST claims that the PHRC's recent dismissal of Plaintiff's complaint does not cure Plaintiff's failure to exhaust administrative remedies because PHRA claims filed while the PHRC retains jurisdiction must be dismissed. (Id.)

A plaintiff must exhaust administrative remedies under the PHRA before filing a civil action. See 43 Pa. C.S. § 962(c)(1); Harrison v. Health Network Lab'ys Ltd., 232 A.3d 674, 683

---

[2] The Court may consider Plaintiff's administrative complaint filed with the EEOC and PHRC (Doc. No. 6-2), his Determination and Notice of Rights from the EEOC (Doc. No. 6-3), and his Notice of Complainant's Rights from the PHRC (Doc. No. 13-1) in connection with the pending motion to dismiss because they are undisputably authentic documents upon which Plaintiff's claims are based. See Mayer, 605 F.3d at 230; Rogan v. Giant Eagle Inc., 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000) (considering, on motion to dismiss, EEOC documents either as "undisputed documents" central to plaintiff's claim or as information which is a matter of public record).

(Pa. 2020); Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997).  "When a claim is filed with the PHRC, the PHRC has exclusive jurisdiction over the claim for one year after its filing, unless the PHRC resolves the claim before the end of the one-year period."  Perry v. Eagle Lake Cmty. Ass'n, Inc., No. 3:23-cv-00811, 2024 WL 1144230, at *1 (M.D. Pa. Mar. 15, 2024) (citing 43 Pa. C.S. § 962(c)(1)).  "If after one year the claim has not been resolved, the plaintiff may then file suit in court."  Id. (citing 42 Pa. C.S. § 962(c)(1) and Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 471 (3d Cir. 2001)).  "Once a plaintiff files a charge under the PHRA, [they] must adhere to the mandatory administrative procedure" because "[t]he administrative process is not discretionary."  See id. (citing Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 921 (Pa. 1989)).  "Thus, if a plaintiff fails to complete the administrative process prior to filing a civil action, dismissal of the PHRA claims is required."  Id. (citing Clay, 559 A.2d at 922–23).

JST argues that Evans v. Lakewood Rehabilitation & Healthcare Center, No. 24-cv-01754, 2025 WL 1162487 (M.D. Pa. Apr. 21, 2025), supports its argument (Doc. No. 6 at 3-4); however, the Court find that case distinguishable from the instant case because the district court stated that the plaintiff had "yet to receive a disposition by the PHRC" at the time of the court's decision addressing a motion to dismiss PHRA claims.  See Evans, 2025 WL 1162487, at *2.  Here, Plaintiff received a determination letter from the PHRC closing his case on January 26, 2026, forty-six (46) days after he filed his complaint in this Court and several months prior to the date of this Court's decision.  (Doc. No. 13-1.)  Plaintiff contends that JST's administrative exhaustion argument is now moot because the PHRC relinquished jurisdiction of Plaintiff's PHRA charge before JST's filing of its partial motion to dismiss, so any premature filing defect under the PHRA has been cured.  (Doc. No. 13 at 5.)

8

District courts have found defendants' administrative exhaustion arguments moot when a plaintiff prematurely filed their complaint before the one-year PHRA deadline, but time cured the defect.[3]  In this case, time has also cured the defect of Plaintiff's premature filing as the PHRC relinquished its jurisdiction over Plaintiff's claim on January 26, 2026, when it sent Plaintiff a dismissal letter and Notice of Complainant's Rights.  (Doc. No. 13-1.)  Although the one-year period for administrative exhaustion under the PHRA had not concluded at the time that Plaintiff filed his complaint in this Court, the statute allows for the PHRC to resolve the claim before the end of the one-year period, which then allows the plaintiff to file suit at that time, instead of waiting for the passage of the one-year deadline.  See 43 Pa. C.S. § 962(c)(1).[4]  The

---

[3]  See Violanti v. Emery Worldwide A-CF Co., 847 F. Supp. 1251, 1258 (M.D. Pa. 1994) ("Although [the plaintiff's] federal complaint was premature, that defect is not fatal to his claim and is correctable by the passage of time.  More than one year has now passed since his PHRC filing, entitling him to maintain an action on that PHRA claim.  Rather than dismiss plaintiff's claim on a curable, technical defect, we will allow his claim to be decided on the merits."); see also Joseph v. Pepperidge Farm Inc., No. 22-cv-04049, 2024 WL 921416 at *8 (E.D. Pa. 2024) (holding that although Joseph prematurely filed the complaint, time had cured the defect since the one-year deadline had passed, and so the defendant's exhaustion argument was moot) (also citing to Wardlaw v. City of Philadelphia, No. 09-cv-03981, 2011 WL 1044936, at *3 (E.D. Pa. 2011) ("Even if the second PHRC charge was not within the scope of Wardlaw's first PHRC charge, and thus filed prematurely by inclusion in the Second Amended Complaint, that defect has been cured by the passage of time. Courts in this Circuit have adopted a flexible approach to PHRA exhaustion by permitting plaintiffs to maintain PHRA claims if the one-year deadline expires during court proceedings.") and Johnson v. Chase Home Finance, 309 F. Supp. 2d 667, 670 (E.D. Pa. 2004) ("Because plaintiff's case has been dismissed by the PHRC, she is now entitled to bring suit in federal court notwithstanding the fact that the case was dismissed by the PHRC after she filed the instant complaint.  The issue of exhaustion on the grounds that the PHRC retains exclusive jurisdiction over cases filed under the PHRA for a period of one year is moot due to the PHRC's dismissal of plaintiff's complaint.")).

[4]  See also Rideout v. Pub. Op., No. 09-cv-00403, 2011 WL 321104, at *5–6 (M.D. Pa. Jan. 28, 2011) (holding that when the PHRC has issued a right to sue letter, the commission has "placed its imprimatur on a plaintiff's subsequent suit in court" which is consistent with the language of the PHRA—that without exception, "plaintiffs 'shall be able to bring an action' in court after the issuance of a right to sue letter" (quoting 43 Pa. C.S. § 962(c)(1))); Bell v. Mericle Dev. Corp., No. 03-cv-51134, 2006 WL 229056, at *4 (M.D. Pa. Jan. 31, 2006) (finding the exhaustion issue moot and denying the defendant's motion to dismiss because the plaintiff was "entitled to assert

Court finds that, given the PHRC's dismissal of Plaintiff's claim on January 26, 2026, it is in the interest of judicial efficiency to allow Plaintiff's PHRA claims to move forward without dismissal because:

> [i]t would be highly formalistic and a waste of judicial resources to dismiss [the plaintiff's] PHRA claims at this time and await a motion to file an amended complaint. Since he has already pleaded PHRA claims, any amendment, of course, would be granted under Rule 15(a)(2) of the Federal Rules of Civil Procedure as in the interest of justice. See Fed. R. Civ. P. 15(a)(2). The Court is also cognizant of the oft-neglected Rule 1, which states that the civil rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Under the circumstances, the court will deem the complaint as now properly pleading PHRA claims.

See Bushra v. Main Line Health, Inc., 709 F. Supp. 3d 164, 172 (E.D. Pa. 2023), aff'd, No. 24-1117, 2025 WL 1078135 (3d Cir. 2025). For these reasons, the Court agrees with Plaintiff that JST's exhaustion argument is moot, and so the Court will deny JST's motion to dismiss Plaintiff's PHRA claims on that ground. The Court now turns to Plaintiff's failure to accommodate religious beliefs claims.

### B.   Counts II and IV—Failure to Accommodate Religious Beliefs

Plaintiff alleges that his religious, Christian beliefs concerning sex and gender conflicted with JST's application of its anti-harassment policy. (Doc. No. 1 ¶ 93.) Plaintiff avers that he communicated his beliefs and concerns about the application of the policy to JST during the November 14 meeting, which Plaintiff argues placed JST on notice of a conflict between his religious beliefs and JST's policies and workplace expectations. See (Doc. No. 1 ¶¶ 52, 94).

---

his PHRA claims in his Amended Complaint, regardless of whether his PHRC charge was dismissed by the PHRC before or after he filed his instant Complaint in this Court"); Ruberg v. Outdoor World Corp., No. 05-cv-01520, 2005 WL 3159070, at *5 (M.D. Pa. Nov. 28, 2005) (concluding that the PHRC's right to sue letter had the effect of relinquishing the PHRC's exclusive jurisdiction).

Plaintiff further asserts that JST did not engage in a good-faith process to identify or offer any reasonable accommodation of Plaintiff's religious beliefs, such as clarifying where and with whom religious conversations could take place, or otherwise adjusting expectations to allow Plaintiff to practice and discuss his faith in a manner that did not impose an undue hardship. (Doc. No. 1 ¶¶ 95–96.)

"Under Title VII, it is unlawful for an employer to 'discharge . . . or otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions or privileges of employment, because of . . . religion.'" Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 319 (3d Cir. 2008) (quoting Shelton v. Univ. of Med. & Dentistry of N.J., 223 F.3d 220, 224 n.4 (3d Cir. 2000) (quoting 42 U.S.C. § 2000e–2(a)(1))). "In addition, under 42 U.S.C. § 2000e(j), an employer must make reasonable accommodations for its employees' religious beliefs and practices unless doing so would create an 'undue hardship' for the employer." Id. (citing Shelton, 223 F.3d at 224).

"To establish a prima facie case of a failure to accommodate claim, the employee must show: (1) [the employee] has a sincere religious belief that conflicts with a job requirement; (2) [the employee] told the employer about the conflict; and (3) [the employee] was disciplined for failing to comply with the conflicting requirement." Id. "The employee must give the employer 'fair warning' that a particular employment practice will interfere with that employee's religious beliefs." Id. (quoting Reed v. Great Lakes Cos., 330 F.3d 931, 935 (7th Cir. 2003) (collecting cases)).

In moving to dismiss Plaintiff's failure to accommodate religious belief claims, JST argues that Plaintiff's complaint does not allege sufficient facts to plausibly suggest the elements of a failure to accommodate claim. (Doc. Nos. 10 at 5; 14 at 4.) JST first argues that Plaintiff's

11

complaint fails to plead that a sincerely-held religious belief actively conflicted with a job requirement. (Doc. No. 10 at 8.) JST also argues that the complaint does not plausibly allege that Plaintiff gave JST fair warning of a conflict between his religious beliefs and a job requirement requiring accommodation. (Doc. No. 14 at 4–5.) Further, JST contends that Plaintiff admitted that he allegedly complied with the purported conflicting job requirement, albeit with objection, which is dispositive of any failure to accommodate claim. (Id. at 5.)

Upon careful consideration of the complaint and relevant authority, the Court finds that Plaintiff has not plausibly alleged a failure to accommodate claim. Evaluation of the elements of such a claim is necessary to determine whether the complaint "state[s] 'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]" of the claim—a standard that "applies with equal force to analyzing the adequacy of claims of employment discrimination." See Wilkerson, 522 F.3d at 321–22 (quoting Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)).[5]

Here, as an initial matter, Plaintiff's complaint does not allege how Plaintiff's sincerely held religious beliefs conflicted with a job requirement, as Plaintiff does not allege that his religious beliefs require him to discuss gender identity and transgender issues at work. See Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 765 (3d Cir. 2004) (affirming dismissal of failure to accommodate claim where plaintiff failed to allege "that anything fundamental to his national origin or religion requires" him to engage in the specific conduct at issue).

---

[5] Plaintiff cites Connelly v. Lane Construction Corporation, 809 F.3d 780 (3d Cir. 2016), in arguing that his complaint "need not establish a prima facie case in order to survive a motion to dismiss." (Doc. No. 13 at 8 (quoting Connelly, 809 F.3d at 789).) However, Connelly reiterates that, as to the elements of a prima facie case of employment discrimination, the applicable pleading standard "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]." See Connelly, 809 F.3d at 789 (quoting Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556)).

12

Further, Plaintiff's complaint does not plausibly plead that he gave JST fair warning that a particular employment practice would interfere with his religious beliefs. Plaintiff's complaint alleges that he communicated "his beliefs and his concerns" about JST's application of the anti-harassment policy (Doc. No. 1 ¶ 94), not that he requested an accommodation for religious beliefs that conflicted with an employment requirement. See Dart v. County of Lebanon, No. 13-cv-02930, 2014 WL 4792135, at *9 (M.D. Pa. Sept. 23, 2014) (dismissing failure to accommodate claim because plaintiff's complaint did not allege that she requested additional schedule accommodations from her employer because of a religious conflict).

Finally, Plaintiff does not plausibly allege that he failed to comply with a conflicting job requirement because he alleges that he "was willing to comply with company policies, and he signed the anti-harassment policy on the spot," thereby complying with the allegedly conflicting job requirement. (Doc. No. 1 ¶ 51.) Plaintiff's complaint avers that he was fired after he "respectfully disagreed that his speech was a violation of JST's policies," not that he refused to comply with company policy and was then fired. (Doc. No. 1 ¶ 70); see Clark v. U.S. Sec. Assocs., Inc., No. 06-cv-01348, 2008 WL 11500370, at *3 (M.D. Pa. Feb. 11, 2008) (granting summary judgment on failure to accommodate claim and explaining that the plaintiff did not meet her burden because she "complied with the requirement that she work the third shift and faced no discipline for having done so").

For these reasons, the Court concludes that Plaintiff's complaint fails to state a claim for failure to accommodate his religious beliefs, and so the Court will grant JST's motion to dismiss Plaintiff's failure to accommodate religious beliefs claims—Count II and to the extent such a claim is asserted in Count IV.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant in part JST's partial motion to dismiss insofar as it will dismiss Plaintiff's failure to accommodate claims and will deny in part JST's motion to dismiss insofar as it seeks dismissal of Plaintiff's PHRA claims.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
